UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12121-GAO

WILLIAM M. MCDERMOTT,
Plaintiff,

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
and U.S. NATIONAL ASSOCIATION,
Defendants.

OPINION AND ORDER
September 30, 2010

O'TOOLE, D.J.

The plaintiff, William M. McDermott, filed suit in Massachusetts Superior Court against the defendants, Mortgage Electronic Registration Systems, Inc. ("MERS") and U.S. Bank National Association ("U.S. Bank"), who subsequently removed the case to this Court.[1] The dispute arises from the alleged failure of Aegis Lending Corporation ("Aegis"), which is not a defendant, to provide the plaintiff with certain booklets and disclosures required under the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA")[2] during a mortgage refinancing, as well as what the plaintiff alleges were misleading and confusing disclosures made to him in violation of CCCDA and Massachusetts General Laws chapter 93A. MERS was apparently the nominee for the lender and mortgagee named in the plaintiff's mortgage, and after

---

[1] Ocwen Loan Servicing, LLC was originally named as a defendant, but the claims against it were dismissed. McDermott v. Mortgage Elec. Registration Sys., Inc., No. 08-12121-GAO, 2009 WL 1298346, at *3 (D. Mass. May 11, 2009).

[2] The plaintiff also asserted violations of the Real Estate Settlement Procedures Act and federal Truth in Lending Act, but those claims were dismissed. McDermott, 2009 WL 1298346, at *2-3.

MERS bid at the foreclosure auction of one of the plaintiff's properties, it assigned its bid to U.S. Bank.

Before the Court are cross-motions for summary judgment. As the parties are talking past each other a bit, each motion shall be addressed in turn.

## I.   Background[3]

In early 2005, the plaintiff owned and occupied as his principal residence a condominium in Lynn, Massachusetts. There was a mortgage on the property to GMAC Mortgage Corporation. At some point, McDermott entered into discussions with Aegis about refinancing the property with the goal of paying off the GMAC mortgage, as well as a mortgage he had on a second condominium, so that he would have only one mortgage on the two properties. The existing mortgages were about $55,000 and $123,000, respectively.

In March 2005, during the application process, the plaintiff asked Aegis at least twice to increase the amount of the loan for which he was applying. With each increase in the application amount, the lender made new disclosure estimates that were either faxed to the plaintiff's friend at his request or picked up by the plaintiff. The plaintiff maintains, however, that he was not told that the eventual terms at closing would be any different than the ones about which the parties had previously corresponded.

Around April 11, 2005, the plaintiff refinanced the mortgage by executing an adjustable rate note in the principal amount of $168,700, and as security for the loan, he executed and granted Aegis a first priority mortgage on the property. The plaintiff's introductory interest rate was 9.41%, and although it was set to increase once the introductory rate expired, it was capped at the first change date at 12.41%. The disclosed prepaid finance charge was $8,563.68.

---

[3] The following is a summary of uncontested facts, except where otherwise noted.

The plaintiff was not represented by counsel at the closing. He was presented with and signed various documents, but did not read them thoroughly. Among the documents he executed were a Truth-in-Lending Disclosure Statement, an Adjustable Rate Note, and a HUD-1A Settlement Statement. Additionally, at the closing attorney's request, he executed a document acknowledging that the attorney represented only the lender. Whether he signed other documents is a matter of dispute between the parties. Apparently, one of the reasons for the dispute is that when McDermott asked for copies of the executed documents, he was not given copies with his signature. According to him, because the closing finished at 10:00 p.m., he was told it was too late in the day to make copies, and so he received copies of unexecuted documents instead. He maintains he did not receive two copies of the Notice of Right to Cancel with his signature, an assertion which the defendants dispute.

In connection with the closing, a title examination fee of $555 was charged to McDermott and about $751[4] was withheld to pay a federal lien that McDermott claims he had already paid off. Additionally, $60,000 was withheld for the GMAC mortgage, an amount that the plaintiff claims was $3,677.08 more than the final payoff of the mortgage, $56,322.92. He recalls that he noticed at the closing that the GMAC payoff was listed for an amount higher than what he thought it should be, but he did not say anything at the time. The plaintiff purports to have eventually received a letter from GMAC stating that the final payoff was $56,322.92.

About six months after the closing, the plaintiff received a $680 check from the closing agent with a letter informing him, without any detailed explanation, that the amount settled his account. The defendants claim that the plaintiff also received a refund check of $186.05 from

---

[4] Somewhat confusingly, the parties alternatively describe this amount as $750, $751, and $795. In any event, the difference between the figures is of no moment to the resolution of the present motions.

GMAC, but the plaintiff claims not to have ever received any payments from any source relative to the closing other than the $680 check from the closing agent.

The plaintiff paid off the GMAC mortgage through the refinancing and received cash to pay the other mortgage, but he failed to do so. On September 17, 2008, a foreclosure sale was scheduled for the plaintiff's property. That same day, but prior to the foreclosure sale, the plaintiff attempted to rescind the mortgage through written correspondence, faxed a demand letter pursuant to Chapter 93A to MERS's attorney, and filed a complaint in Essex County Superior Court. The rescission request was denied, and the foreclosure sale was held. McDermott attended. MERS bid and subsequently assigned its bid to U.S. Bank.

## II.   Plaintiff's Motion for Partial Summary Judgment

### A.   Understatement of Finance Charge

The CCCDA provides that a consumer who grants a security interest on property used by the consumer as his principal dwelling has the right to rescind the loan transaction if the necessary disclosures required by statute are not provided. Mass. Gen. Laws ch. 140D, § 10(a). A consumer may exercise that right until midnight of the third business day following consummation of the loan or the delivery of all required disclosures and written notice of the rescission right. Id. If the required disclosures, as described below, are not made, then the right to rescind "shall expire four years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first." 209 Mass. Code Regs. 32.23(1)(c).

The CCCDA requires that creditors disclose to consumers certain information clearly and conspicuously. Mass. Gen. Laws ch. 140D, § 8(a). Among the disclosure requirements are those defined by statute as "material disclosures," which include the annual percentage rate, the

method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness. Id. § 1. The finance charge, of particular importance here, is the "cost of consumer credit as a dollar amount." 209 Mass. Code Regs. 32.04(1). It includes any charge payable by the consumer and imposed by the creditor as an incident to the extension of credit. Id. A seller need not disclose as a finance charge "any charge of a type payable in a comparable cash transaction." Id. In short, "[t]hese provisions require sellers to disclose as 'finance charges' fees payable by credit customers, but not by cash customers, in comparable transactions." See Cornist v. B.J.T. Auto Sales, Inc., 272 F.3d 322, 327 (6th Cir. 2001).[5]

Generally, an understatement of the finance charge is considered accurate if it is within one-half percent of the amount of credit extended. Mass. Gen. Laws ch. 140D, § 4(f)(2)(a). However, once foreclosure has been initiated, the finance charge and other disclosures affected by the finance charge are considered accurate only if the disclosed finance charge does not vary from the actual finance charge by more than thirty-five dollars. Id. § 10(i)(2). Because a foreclosure had already been initiated in this case, the disclosure is considered accurate if the actual finance charge is $8,598.68 or less. See id. The plaintiff argues that he is entitled to judgment as a matter of law because the finance charge disclosed to him at the closing— $8,563.68—was understated by more than thirty-five dollars, thereby extending his right to

---

[5] Because the CCCDA was closely modeled after and essentially mirrors the Truth in Lending Act ("TILA") for the purposes of this case, it is "common ground that the [CCCDA] should be construed in accordance with the TILA." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir. 2007); accord Mayo v. Key Fin. Servs., Inc., 678 N.E.2d 1311, 1313 (Mass. 1997).

rescission. He argues that he exercised his right to rescind the transaction prior to the sale of his property at foreclosure.

The dispute here centers on whether (a) the attorney's fees, (b) a purported overpayment of the GMAC mortgage and a payoff of an already-satisfied federal lien, and (c) an allegedly unreasonable title examination fee should be considered in the finance charge calculation for the purposes of determining whether it was understated by more than thirty-five dollars.

1. Attorney's Fees

The plaintiff argues that the closing attorney's fees should have been included in the finance charge. However, as the defendants note, the attorney's fees do appear to have been included in the finance charge under "Total remaining other fee(s)." (Aff. of Nichelle Jones Ex. E, at 3) (dkt. no. 34-6). Consequently, this has no effect on the accuracy of the finance charge.

2. Overpayment of prior mortgage and federal lien

The plaintiff contends that the defendants failed to include the money withheld to pay the GMAC mortgage and a federal tax lien as finance charges. He argues that because he never had "actual use" of the money used to pay them, they cannot be considered part of the "amount financed."

In Smith v. Fidelity Consumer Discount Co., 898 F.2d 896 (3rd Cir. 1990), the Third Circuit was faced with a similar question of whether previously owed taxes and prior mortgages should have been disclosed as finance charges. It examined the relevant statutory provisions and examples of finance charges listed in the regulations, see 12 C.F.R. § 226(4)(b), determined that the charges in question did not resemble the listed examples of finance charges, and reasoned that such charges then are not properly considered finance charges. Smith, 898 F.2d at 905-06. It went on to find further support in section 226.20(a), covering refinancing, which requires that

6

"the new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation." Id. at 906. The necessary implication of including the unearned portion of the old finance charge without any mention of the prior debt, according to the court, was that refinanced debts are not finance charges. Id.

The regulations considered by the Smith court have essentially similar Massachusetts counterparts, see 209 Mass. Code Regs. 32.04(2) (examples of finance charges); 209 Mass. Code Regs. 32.20(1) (refinancings), and the court's reasoning is persuasive here. The plaintiff provides no reason to conclude that the money withheld to satisfy the mortgage and federal lien was incident to the extension of credit and would not be charged in comparable cash transactions. Consequently, the amounts are not properly considered part of the finance charge. See Smith, 898 F.2d at 905-06; see also Mitchell v. Beneficial Loan & Thrift Co., 463 F.3d 793, 796 (8th Cir. 2006) (finding that for the purposes of determining the points and fees under the Home Ownership and Equity Protection Act, an overcharge for a payoff of a first mortgage was not a finance charge because it was imposed as an amount financed, not as an incident to the extension of credit, and would have been imposed in a comparable cash transaction).

        3.    Title examination fee

A title examination fee in a residential mortgage transaction is normally exempted from the finance charge calculation as long as it is bona fide and reasonable. See 209 Mass. Code Regs. 32.04(3)(g)(1). The plaintiff conclusorily asserts that the $555 title examination fee was unreasonable. However, he offers no evidence, such as expert witnesses attesting to the reasonable rate of title examination fees, to support his assertion. See Mayo v. Key Fin. Servs., Inc., No. 926441D, 1994 WL 879676, at *3-4 (Mass. Super. Ct. June 22, 1994) (at summary judgment, plaintiffs complaining of unreasonable rate for title insurance offered affidavit

evidence of real estate attorneys stating the reasonable rate for title insurance, and the defendant's affidavit and other evidence countering it created an issue of fact). Accordingly, his conclusory assertion that the fee was excessive is insufficient to raise a genuine issue of material fact, and there is thus no basis in the record for a finding that the title examination fee was not bona fide or reasonable. The amount was properly excluded from the calculation of the finance charge.

In sum, because the attorney's fees were already included in the finance charge, the money withheld to satisfy the prior mortgage and federal lien was not incident to the extension of credit, and the examination fee was not unreasonable, the finance charge disclosure was not understated by more than thirty-five dollars. McDermott has not shown a violation of the regulation in this respect.

B.     Financial Liability of U.S. Bank

The plaintiff next argues that U.S. Bank is liable to him for damages and attorneys' fees. A plaintiff may assert a rescission claim against an assignee of an obligation as against an original lender. Mass. Gen. Laws ch. 140D, § 33(c); see also Mayo, 678 N.E.2d at 1313. However, other rights, such as a claim for damages, may be asserted against an assignee only if the violation is "apparent on the face of the disclosure statement." Mass. Gen. Laws ch. 140D, § 33(a); see also Wells Fargo Bank, N.A. v. Jaaskelainen, 407 B.R. 449, 462 (D. Mass. 2009); Mayo, 678 N.E.2d at 1313. One way[6] a violation is apparent on the face of the disclosure document is if it "'can be determined to be incomplete or inaccurate from the face of the

---

[6] The statute also notes that a violation may be apparent on the face of the disclosure document if it does not use the terms required by the statute or regulations promulgated thereunder, see Mass. Gen. Laws ch. 140D, § 33(a), but neither party appears to argue that this would apply.

disclosure statement or other documents assigned.'" Mayo, 678 N.E. 2d at 1313 (quoting Mass. Gen. Laws ch. 140D, § 33(a)).

The plaintiff argues that U.S. Bank, as an assignee, should have known from the face of the disclosure statement that the withholdings for the first mortgage and the federal tax debt constituted a violation of the statute. He contends that the "principles of prudent underwriting" and "integrity" require a lender to maintain documentation about the debt and payment when it undertakes to pay debts owed to third parties. (Mem. of Law in Supp. of Pl.'s Mot. for Partial Summ. J. 11) (dkt. no. 39). However, even if the withholdings about which he complains were CCCDA violations, he does not show how they would be so "obvious, evident, or manifest" such that U.S. Bank would have discovered a violation by examining it or comparing it to the itemization of the amount financed, the note, or any other disclosure documents. See Ritter v. Durand Chevrolet, Inc., 932 F. Supp. 32, 35 (D. Mass. 1996) (internal quotations omitted). Likewise, the Notice of Right to Rescission was signed by McDermott acknowledging he had received two copies of the document, and it would not have been obvious from the face of things if Aegis had in fact failed to provide two copies. U.S. Bank was not required to investigate further. See Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998) (holding that the TILA counterpart "does not impose a duty of additional inquiry on assignees" and that "[o]nly violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA").

C.     Itemization of Amount Financed

The plaintiff cursorily advances an additional argument that the lender did not provide him with an itemization of the amount financed in violation of chapter 140D, section 12(a)(2)(B). However, the defendants have provided a copy of a form initialed by the plaintiff

9

which includes an itemization of the amount financed. That is sufficient to defeat summary judgment as to that issue.

### III.     Defendants' Motion for Summary Judgment (dkt. no. 32)

The defendants move for summary judgment on all claims. They contend that there is no basis for rescission, that U.S. Bank is not liable for damages or attorneys' fees as an assignee, and that the Chapter 93A claim fails on procedural and substantive grounds.

#### A.     Basis for Rescission

According to the defendants, the plaintiff bases his rescission claim on four theories, on each of which they contend they are entitled to judgment as a matter of law: (1) the loan is a "high cost home mortgage loan" because of its interest rate; (2) alternatively, the loan is a "high cost home mortgage loan" because of the total amount of points and fees; (3) the loan disclosures were misleading because McDermott was given different and varying iterations of the disclosures; and (4) he received only one copy of the Notice of Right to Rescind, rather than two. The plaintiff has apparently accepted this characterization of his rescission claim.

##### 1.     Whether loan was high cost due to excessive interest rate

The provisions of the Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C, which amended the CCCDA to require lenders to make additional loan disclosures, are only applicable to loans that are characterized as "high cost home mortgages." There are two categories of high cost home mortgage loans: (1) loans that have an interest rate that exceeds eight percent their yield rate on United States Treasury securities with a comparable maturity period as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender; and (2) loans that have "points and fees" that exceed five percent of the total loan amount. Mass. Gen. Laws ch. 183C, § 2. The

defendants argue there was no requirement to make any additional high cost loan disclosures because the loan does not qualify as a high cost loan on either ground, and consequently, chapter 183C does not provide a basis of rescission.

As to the interest rate argument, the operative Treasury rate by which to compare the plaintiff's loan is 4.55% according to evidence in the record. That was the rate on February 15, 2005, the fifteenth day in the month before the loan application for a twenty-year loan.[7] In order to be high cost, the loan would have to have a rate of 12.55% (4.55% + 8%). Here, the plaintiff's initial interest rate was 9.41%. As it was adjustable, the appropriate interest rate was the effective rate once the introductory rate expired. See 209 Mass. Code Regs. 32.32(1)(b). By agreement, it was capped at 12.41%. Therefore, as the defendants argue, the loan was not "high cost" based on the interest rate.

### 2. Whether loan was high cost due to points and fees

Alternatively, the loan would qualify as a high cost home mortgage if the "points and fees" exceeded $8,435, i.e., five percent of the total loan amount ($168,700 x 5%). The defendants maintain that the points and fees were $7,739.89, short of the statutory threshold. The plaintiff agrees that the points and fees as reflected on the HUD-1 Settlement Statement fall short. He contends, however, that the overcharges he was charged to pay off his GMAC mortgage and to satisfy an already-paid federal lien should be included in the calculation. Although the points and fees calculation may include additional items beyond what is used to calculate the finance charge, the plaintiff essentially echoes the argument made in his own motion regarding the finance charge. I have found the argument unpersuasive.

---

[7] No thirty-year loans were available during this time.

### 3. Whether disclosures are confusing

Generally, the adequacy of a disclosure is based on its objective reasonableness from the "vantage point of a hypothetical average consumer." See Palmer v. Champion Mort., 465 F.3d 24, 28 (1st Cir. 2006) (analyzing sufficiency of the notice) and cases cited therein; Reynolds v. E-Loan, Inc., No. 07-cv-11862, 2008 WL 4939320, at *4 (D. Mass. Nov. 14, 2008). Here, during the application process, the plaintiff asked Aegis at least twice to increase the loan amount. With each increase, the lender made new disclosures. Although the plaintiff claims the multiple sets of disclosures were confusing, the lender was merely responding to the plaintiff's requests to change the terms. Not only are successive disclosures objectively reasonable under these circumstances, but the plaintiff can hardly claim to be confused by documents reflecting the changes he himself requested.

### 4. Number of copies received of the Notice of Right to Rescind

The plaintiff claims that he received only one copy of the notice of his right to rescind, in violation of title 209, section 32.15 of the Code of Massachusetts Regulations. The plaintiff's signed acknowledgment of delivery creates a rebuttable presumption that the lender did provide the required two copies. See Mass. Gen. Laws ch. 140D, § 10(c). In response, the plaintiff offers a sworn affidavit stating that he never received two copies of the notice. The sworn statement is sufficient to raise an issue of fact, see Stone v. Mehlberg, 728 F. Supp. 1341, 1354 (W.D. Mich. 1989) (affidavit testimony rebutted presumption of delivery); Bilal v. Household Fin. Corp. (In re Bilal), 296 B.R. 828, 840 (Bankr. D. Kan. 2003) (borrower's sworn statement that he did not receive documents rebutted presumption that the requisite copies were given to him created by his signature and constituted sufficient evidence to raise a genuine issue of material fact for trial), but it is not a material one.

By acknowledging that he received at least one copy of the notice, McDermott admits that he had actual notice of the right to cancel or rescind the transaction. I agree with the recent decision by my colleague Judge Young that the delivery of only a single copy of the notice rather than two would not trigger an extension of the period within which the right to rescind could be exercised. See King v. Long Beach Mortg., Co., 672 F. Supp. 2d 238, 250-51 (D. Mass. 2009). Not only is that interpretation consistent with the language of the applicable regulation, see id. at 250, it also is consistent with the sense and purpose of the regulation. It makes sense to provide for an extended period within which a person ignorant—because not informed—of the right to rescind might discover the existence of the right and choose to exercise it. There is no reason to provide such an extended opportunity to a person who actually knows of the existence of the right to cancel and does not timely exercise it.

B.      Liability as Assignee

The defendants next argue that they cannot be held liable for damages, attorneys' fees, or costs because any disclosure violations, if they occurred, were not apparent on the face of the documents. This is the other side of the coin argued by the plaintiff, and the motion is granted as to this issue for substantially the same reasons as already described.

C.      Chapter 93A Claim

Finally, the defendants contend they are entitled to summary judgment on the plaintiff's Chapter 93A claim. First, they argue that the claim is procedurally barred because the plaintiff failed to wait the statutory thirty-day period to file his complaint after serving his demand letter on MERS and the plaintiff did not serve U.S. Bank at all. Second, they contend that the claim is substantively deficient because the plaintiff has not pled any facts or any legal theory by which

the defendants, without "unfair or deceptive" acts of their own, would be responsible for the loan originator's actions.

Chapter 93A requires plaintiffs to serve a written demand letter on prospective defendants at least thirty days prior to filing an action. Id. § 9(3). Here, it is undisputed that the plaintiff served his demand letter on MERS on the same day he filed his complaint, and did not serve U.S. Bank prior to commencing the lawsuit, contrary to the requirements of Chapter 93A. The prerequisites to a Section 9 suit were thus not satisfied by the plaintiff.

More importantly, the Chapter 93A claim fails for substantive reasons. The plaintiff relies on the valid proposition that a violation of CCCDA constitutes a violation of Chapter 93A, see Mass. Gen. Laws ch. 140D, § 34 ("A violation of this chapter, or any rule or regulation issued hereunder, shall constitute a violation of chapter ninety-three A."); Mills v. Andover Bank, No. 976155, 1999 WL 1336606, at *5 (Mass. Super. Ct. Jan. 5, 1999), as does a violation of chapter 183C, see id. § 18(a); Commonwealth v. Fremont Inv. & Loan, 897 N.E.2d 548, 560 (Mass. 2008). As discussed above, however, on the summary judgment record, it is apparent that the plaintiff cannot succeed in a claim under either the CCCDA or Chapter 183C. Accordingly, the defendants are entitled to judgment as a matter of law on the 93A claim.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion for Partial Summary Judgment (dkt. no. 37) is DENIED and the defendants' Motion for Summary Judgment (dkt. no. 32) is GRANTED. Judgment shall be entered for the defendants.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge